IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RESIDENTIAL FINANCE
CORPORATION,

        Plaintiff,

     v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

        Defendant.

Case No. 2:12-cv-00008
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) Plaintiff's Motion for Summary Judgment (ECF No. 4);

(2) Defendant's Motion to Dismiss, Cross-Motion for Summary Judgment, and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 12);

(3) Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and Defendant's Cross-Motion for Summary Judgment/Plaintiff's Reply Memorandum in Support of its Motion for Summary Judgment (ECF No. 18); and

(4) Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment (ECF No. 19).

For the reasons that follow, this Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 4) and **DENIES** Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment (ECF No. 12).

### I. Background

Plaintiff, Residential Finance Corporation, is in the residential mortgage financing

business.  On August 9, 2011, the company filed a Form I-129 petition seeking an H-1B Visa for Geza Rakoczi, a twenty-five-year-old who has lived in the United States since the age of four. Plaintiff wants to employ Rakoczi as a market research analyst, and a successful petition would result in Rakoczi obtaining H-1B status under Section 101(a)(15)(H)(i)(b) of the Immigration and Nationality Act.  In other words, Rakoczi would be "an alien . . . who is coming temporarily to the United States to perform services . . . in a specialty occupation."  8 U.S.C. § 1101(a)(15)(H)(i)(b).

After an unexplained initial delay in processing, Defendant, the United States Citizenship and Immigration Services, requested additional evidence in regard to the petition.  Plaintiff responded to the request, and Defendant subsequently denied the petition on November 11, 2011.  Plaintiff now seeks judicial review of the denial pursuant to 5 U.S.C. § 702 and has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (ECF No. 4.) Defendant has filed a combined motion pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56.  (ECF No. 12.)  The parties have fully briefed the motions, which are now ripe for disposition.

## II.  Discussion

### A.  Jurisdiction & Little Tucker Act

Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction.  Under the Federal Rules of Civil Procedure, "[p]laintiffs have the burden of proving jurisdiction in order to survive a Rule 12(b)(1) motion . . . ."  *Weaver v. Univ. of Cincinnati*, 758 F. Supp. 446, 448 (S.D. Ohio 1991) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  *See also Rapier v. Union City Non-Ferrous,*

*Inc.*, 197 F. Supp. 2d 1008, 1012 (S.D. Ohio 2002) (citing *McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*, 298 U.S. 178, 189 (1936); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)) ("The plaintiff bears the burden of establishing, by a preponderance of the evidence, the existence of federal subject matter jurisdiction").

Motions under Rule 12(b)(1) generally come in two varieties, either facial or factual attacks on the complaint. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 2004). A facial attack on the subject matter jurisdiction alleged by a complaint merely questions the sufficiency of the pleading. *Id.* In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, a similar safeguard employed under Rule 12(b)(6) motions to dismiss. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). *See also Nat'l Ass'n of Minority Contractors v. Martinez*, 248 F. Supp. 2d 679, 681 (S.D. Ohio 2002). As a result, this Court may weigh the evidence and resolve any factual disputes when adjudicating such a jurisdictional challenge. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 2004) (citing *Moir*, 895 F.2d at 269).

Invoking Rule 12(b)(1), Defendant argues that the Court lacks subject matter jurisdiction on the premise that Plaintiff lacks standing to challenge the denial of the H-1B petition on Rakoczi's behalf. This proposition is contrary to law. *Pai v. U.S. Citizenship & Immigration Servs.*, 810 F. Supp. 2d 102, 111-12 (D.D.C. 2011) ("stating that numerous courts . . . agree (albeit for a variety of reasons) that the petitioner—and not the beneficiary—of a visa application is the proper party with standing to challenge the agency's action"); *Morris v. Gonzales*, No. 06-4383, 2007 WL 2740438, at *6 (E.D.Pa. Sept. 19, 2007) (explaining that the

3

petitioner is the only party with standing to seek review of the revocation of a visa); *Blacher v. Ridge*, 436 F. Supp. 2d 602, 606 n.3 (S.D.N.Y. 2006) (holding that "the petitioner . . . is the only party with standing to seek review of the petition's denial"). *Cf.* 8 C.F.R. § 103.3(a)(1)(iii)(B) (providing that in an administrative appeal, the affected party "does not include the beneficiary of a visa petition").

Plaintiff has incurred a sufficient injury in fact inflicted by the denial of the petition. The denial of the H-1B petition deprived Plaintiff of the ability to employ and reap the presumed benefits of employing Rakoczi. *See Wong v. Napolitano*, 654 F. Supp. 2d 1184, 1189 (D. Oregon 2009) ( collecting cases supporting the proposition that "[b]ecause the denial of [a] visa application would deprive the employer of [a] prospective employee, each employer ha[s] a concrete and particularized injury, namely the inability to hire a specific employee it would have hired absent the agency's action."). Contrary to Defendant's argument, there is simply no requirement that Plaintiff has to show that it cannot find another employee to fill the market research analyst position before it can be regarded as having sustained an injury that confers standing.

Defendant also argues that the Court should dismiss the complaint on the ground that Plaintiff fails to state a claim under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). That statute provides:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> . . .
>
> **(2)** Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied

4

> contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41.
> . . .

28 U.S.C. § 1346(a)(2). After citing the statute, Defendant states that because Plaintiff neither seeks money damages nor asserts a source of substantive law mandating monetary compensation, Plaintiff has failed to state a claim upon which this Court can grant relief. (ECF No. 12, at 12.)

This odd portion of the briefing invokes Rule 12(b)(6). In assessing whether Plaintiff has set forth a claim upon which this Court can grant relief, the Court must construe the complaint in favor of Plaintiff, accept the factual allegations contained in that pleading as true, and determine whether the factual allegations presents plausible claims. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

Defendant has failed to direct this Court to any case in which any court has ever applied 28 U.S.C. § 1346(a)(2) as requested in the context of visa denial case. Plaintiff in turn argues that "[b]ecause the Court clearly does have jurisdiction over this action pursuant to 28 U.S.C. § 1331, the fact that it may not also have jurisdiction over this action under 28 U.S.C. § 1346(a)(2) is of no consequence." (ECF No. 18, at 1-2.) Agreeing with Plaintiff (if perhaps not Plaintiff's use of "clearly"), this Court cannot say that Plaintiff has failed to state a plausible claim.

Given the foregoing, the Court **DENIES** Defendant's Rule 12 motions. (ECF No. 12.) This is, however, not the end of the jurisdictional inquiry. If precedent exists that serves to divest this Court of jurisdiction, regardless of whether the parties cite the case in their briefing, then this Court must *sua sponte* raise the issue. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In *CDI Information Services, Inc. v. Reno*, 278 F.3d 616 (6th Cir. 2002), the Sixth Circuit addressed the effect of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009, on judicial review of the denial of a petition for extension of an alien's H-1B visa. *Sua sponte* raising the issue of jurisdiction on appeal, the court of appeals held that federal courts lacked subject matter jurisdiction to review that decision based on 8 U.S.C. § 1252(a)(2)(B)(ii). The current version of that statute, which substantively tracks the version upon which the Sixth Circuit relied but also includes the

6

Secretary of Homeland Security, provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
>     . . .
>      **(ii)** any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252 (a)(2)(B)(ii). The court of appeals reasoned:

> The subchapter referred to is subchapter II of Chapter 12 of Title 8, which covers sections 1151 through 1378. Section 1184, which falls within this subchapter, governs the admission of non-immigrants, including H1-B non-immigrants such as Mr. Vaideeswaran, to the United States. It provides that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe." 8 U.S.C. § 1184(a)(1) (1999). The relevant regulation governing Mr. Vaideeswaran's petition for a visa extension, 8 C.F.R. § 214.1(c)(5), clearly confers discretion on the Service, stating that "[w]here an applicant or petitioner demonstrates eligibility for a requested extension, it may be granted at the discretion of the Service." 8 C.F.R. § 214.1(c)(5) (2001). Accordingly, we find that we lack jurisdiction to hear Mr. Vaideeswaran's complaint.

*CDI Information Services, Inc.*, 278 F.3d at 619. Notably, the Sixth Circuit held "that section 1252(a)(2)(B)(ii) is not limited to discretionary decisions made within the context of removal proceedings." *Id.* at 620. This reading of § 1252(a)(2)(B)(ii)–broader than many courts in other Circuits–is binding precedent. The relevance of this precedent is that, if applicable here, its application would mean that § 1252(a)(2)(B)(ii) divests this Court of subject matter jurisdiction over the denial of the Rakoczi H-1B petition.

*CDI Information Services, Inc.* does not preclude jurisdiction here. That case involved 8 U.S.C. § 1184(a)(1) and 8 C.F.R. § 214.1(c)(5), while consideration of the petition at issue here

7

involves 8 U.S.C. § 1184 and 8 C.F.R. § 214.2(h). This is a key point because the language of the regulations involved proves distinguishable so as to preclude application of *CDI Information Services, Inc.*

>8 C.F.R. § 214.2(h)(1)(i) provides:
>
>Under section 101(a)(15)(H) of the Act, an alien may be authorized to come to the United States temporarily to perform services or labor for, or to receive training from, an employer, if petitioned for by that employer. Under this nonimmigrant category, the alien may be classified as follows: . . . under section 101(a)(15)(H)(i)(b) of the Act as an alien who is coming to perform services in a specialty occupation . . . .

8 C.F.R. § 214.2(h)(1)(i). Another section of the regulation provides

>An H-1B classification may be granted to an alien who:
>
>(1) Will perform services in a specialty occupation which requires theoretical and practical application of a body of highly specialized knowledge and attainment of a baccalaureate or higher degree or its equivalent as a minimum requirement for entry into the occupation in the United States, and who is qualified to perform services in the specialty occupation because he or she has attained a baccalaureate or higher degree or its equivalent in the specialty occupation[.]

8 C.F.R. § 214.2(h)(4)(i)(A)(1). Thus, the regulations involved here do not echo *CDI Information Services, Inc.*'s regulation, which contained an express declaration of discretion. *See* 8 C.F.R. § 214.1(c)(5) (providing that the "requested extension . . . may be granted *at the discretion of* the Service" (emphasis added)). If "may" is interchangeable with "may at the discretion of," then Congress has set forth a statutory scheme in which it sometimes employs surplusage without any apparent basis for doing so. Crediting that Congress used the extra words to mean something, this Court concludes that § 1252(a)(2)(B)(ii) is not meant to be a jurisdiction-divesting statute that covers any and all agency conduct containing any component of or related to discretionary decisionmaking. Rather, § 1252(a)(2)(B)(ii)–even as construed in

8

*CDI Information Services, Inc.*–appears to target only those intrinsically specified instances where a decision is sufficiently discretionary so as to warrant immunization from judicial review.

Consequently, what removes the instant case from the scope of *CDI Information Services, Inc.* is that here there is no explicit discretion component, which is the Sixth Circuit's requisite characteristic for invocation of § 1252(a)(2)(B)(ii). Tracking this approach, another judicial officer has explained H-1B proceedings as follows:

> [T]his Court looks to the relevant statutes in the present case to determine whether the denial of an H–1B nonimmigrant visa is committed to agency discretion and therefore unreviewable by this Court—8 U.S.C. § 1101(a)(15)(H)(i)(b) and § 1184(i)(1), (2). 8 U.S.C. § 1101(a)(15)(H)(i)(b) provides that an alien coming temporarily to the United States to perform services in a specialty occupation, as defined by section 1184(i)(1), is a nonimmigrant alien. As set forth above, § 1184(i)(1), (2) and 8 C.F.R. § 214.2 establish explicit criteria, which, if fulfilled, qualify an occupation as a "specialty occupation" and an alien beneficiary for nonimmigrant H–1B status. When evaluating a petition for an H–1B nonimmigrant visa, the INS is bound by 8 U.S.C. § 1184(a)(1) to follow the statutory regulations established in 8 C.F.R. § 214.2, as "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe." 8 U.S.C. § 1184(a)(1). The Attorney General's treatment of alien petitions for nonimmigrant H–1B status is therefore governed by regulations and can be distinguished from her treatment of other matters under 8 U.S.C. Chapter 12 committed solely to her discretion. *See, e.g.,* 8 U.S.C. § 1182(h) ("The Attorney General may, in his discretion, waive the application" of the enumerated subparagraphs); 8 U.S.C. §§ 1154(a)(1)(H), 1229b(b)(2)(E) ( "The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General"); 8 U.S.C. § 1227(a)(1)(E)(iii) ("The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i)"); 8 U.S.C. § 1225(b)(1)(A)(iii)( *l* ) ("The Attorney General *may* apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time") (emphasis added).
>
> Accordingly, this Court concludes that a determination regarding a petition for a nonimmigrant H–1B visa is not "committed to agency discretion by law," and that the INA provides "judicially manageable standards," which have been repeatedly used by courts to evaluate agency action for abuse of discretion in

9

>granting or denying petitions for a nonimmigrant H–1B visa.  *See, e.g., Dominance Industries, Inc., et al. v. INS, et al.*, 1998 WL 874904; *All Aboard Worldwide Couriers, Inc. v. Attorney General*, 8 F.Supp.2d 379 (S.D.N.Y. 1998); *Mercy Catholic Medical Center v. Reno*, 1994 WL 698293 (E.D.Pa.1 994); *Young China Daily v. Chappell*, 742 F.Supp. 552 (N.D.Cal.1989); *Central Indonesian Trading Company v. INS*, 1990 WL 161020 (S.D.N.Y.); *Bodeux v. INS*, 668 F.Supp. 1452 (D.Kan. 1987); *Occidental Engineering Company v. INS*, 753 F.2d 766 (9th Cir. 1985).

*Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1160-61 (D.Minn. 1999).  The fact that this construction was offered in the context of discussing the potentially jurisdiction-divesting 5 U.S.C. § 701 does not render useless here the main point of the quoted passage: that a determination regarding a petition for a nonimmigrant H–1B visa is not committed to agency discretion.  Thus, although the Sixth Circuit has disagreed with *Shanti*'s more narrow construction of the scope of § 1252(a)(2)(B)(ii), the court of appeals did not reject expressly its conclusion regarding whether the denial of a H-1B petition such as found here is a discretionary decision.  *CDI Information Services, Inc.*, 278 F.3d at 619-20.

The approach discussed above may or may not be correct.  *See Evangelical Lutheran Church in Am. v. Immigration & Naturalization Servs.*, 288 F. Supp. 2d 32 (D. Columbia 2003) (summarizing *CDI Information Services, Inc.* and contrary cases and concluding that "there is ample case law to support either interpretation of § 1252").  The contours of *CDI Information Services, Inc.* are unclear.  The Sixth Circuit itself has subsequently described *CDI Information Services, Inc.* somewhat generally, although the rationale of *CDI Information Services, Inc.* suggests that it be given broad effect.  *See Abu-Khaliel v. Gonzales*, 436 F.3d 627, 632 (6th Cir. 2006) ("*CDI Information Services* dealt with an application for a visa extension.").  Perhaps more important is that the court of appeals may be linking the statute *with* the regulation arising from it, rather than solely crediting the statute involved as singularly dispositive of the

discretionary decision-jurisdiction issue. *Id.* ("Section 1184(a)(1) *and* the regulation it enables, 8 C.F.R. § 214.1(c)(5), give the Attorney General discretion over the granting of visa applications." (emphasis added)). Of course, the court of appeals may have simply meant that the statute confers discretion *and* the regulations present discretionary choices informing the exercise of the statutory discretion.

Not all courts have adopted such a view that a regulation can inform the issue of whether a discretionary decision is involved. *See, e.g., Pedrozo v. Clinton*, 610 F. Supp. 2d 730, 737 (S.D. Texas 2009) ("[B]ecause of the jurisdiction stripping statute's pellucid phrasing, it is clear the language of other federal regulations further defining the petition process have no bearing in determining whether USCIS's duty to act is discretionary or non-discretionary."). The role of a regulation in the jurisdiction equation is therefore complicated, as one judge has explained:

> Even though the jurisdiction-stripping provisions of section 1252 apply outside the removal context, *see Zhu v. Gonzales*, 411 F.3d 292, 294 (D.C. Cir. 2005); *El-Khader*, 366 F.3d at 567; *CDI Info. Servs., Inc. v. Reno*, 278 F.3d 616, 620 (6th Cir. 2002); *Van Dinh v. Reno*, 197 F.3d 427, 432 (10th Cir. 1999), the question remains whether the statutory scheme places the authority to grant H-1B visa petitions sufficiently within CIS's discretion as to engage the gears of the jurisdictional bar.
>
> The answer to this question is freighted with uncertainty, in part because the courts of appeals have disagreed about how to approach the matter of when a statute can be said to "specify" discretionary authority. *See, e.g., Zhu*, 411 F.3d at 295 (describing various approaches). To illustrate, the Sixth Circuit determined that it lacked jurisdiction to review the denial of an H-1B visa because the regulations, rather than the pertinent statute itself, commit the matter to agency discretion. *See CDI Info. Servs.*, 278 F.3d at 619. But other circuits have rejected that interpretive model. *See, e.g., Zafar v. U.S. Atty. Gen.*, 461 F.3d 1357, 1361 (11th Cir. 2006); *Zhao v. Gonzales*, 404 F.3d 295, 303 & n.6 (5th Cir. 2005). We, too, recently have rejected it, insisting that the relevant commitment to agency discretion must be found in the statute itself. *See Alsamhouri v. Gonzales*, 484 F.3d 117, 122 (1st Cir. 2007). There is, moreover, a further problem. The text of the statute upon which the government relies here, 8 U.S.C. § 1184(a)(1), is considerably less definitive in its commitment of authority to agency discretion than other statutes that have been found to animate the jurisdictional bar.

*Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 143 (1st Cir. 2007).  Thus, even if *CDI Information Services, Inc.* is perhaps less clear than it might have been on whether the general language of the statute itself answers the jurisdictional bar query as opposed to a related regulation, some courts have treated the holding of that case as regulation-dependent.  It is unclear whether the Sixth Circuit construed the statute involved to present a "specified" discretionary decision without reliance on the more specific regulation language expressly recognizing the requisite discretion.

What is clear is that courts within the Circuit have not been uniform in their treatment of *CDI Information Services, Inc.*  The court of appeals has applied *CDI Information Services, Inc.* outside the specific context of that case, albeit without setting forth any detailed statutory analysis.  *See Thomas v. Jenifer*, 33 F. App'x 212, 212 (6th Cir. 2002) (holding that § 1252(a)(2)(B)(ii) applied to a case involving "EB-2 visas" because the issuance of such a visa "is clearly a discretionary decision of the Attorney General, as delegated to the INS").  At least one district court judge in this Circuit, recognizing but seeking to distinguish *CDI Information Services, Inc.*, has read that decision as presenting a critical distinction between *substantive* discretionary decisions (no jurisdiction exists) and *procedural* decisions (jurisdiction exists).  *See Detroit Free Press v. Ashcroft*, 195 F. Supp. 2d 948, 955–56 (E.D. Mich. 2002).  *But see Abu-Khaliel v. Gonzales*, 436 F.3d at 634 ("If Congress grants courts the ability to review the merits of a proceeding, it would seem very odd indeed for a court to lack the ability to review a procedural decision that is determinative of the merits of a case, particularly when the court has jurisdiction to review the merits of that case absent a conclusive procedural ruling.").  Another district court judge has reached the merits of an H-1B petition case involving 8 C.F.R. §

214.2(h)(4) without even discussing either *CDI Information Services, Inc.* or § 1252(a)(2)(B)(ii). *See EG Enters., Inc. v. Dep't of Homeland Sec.*, 467 F. Supp. 2d 728 (E.D. Mich. 2006).

Against such a backdrop, this Court recognizes that it may be incorrect in reading *CDI Information Services, Inc.* to apply only in what amounts to a magic words context. *See Global Export/Import Link, Inc. v. U.S. Bureau of Citizenship & Immigration Servs.*, 423 F. Supp. 2d 703, 707 (E.D. Mich. 2006) (rejecting magic words approach and determining whether § 1252(a)(2)(B)(ii) applies by focusing on whether each statutory provision involved leaves the decision to the Attorney General). The cleaner analysis of a district court judge from outside this Circuit may thus prove correct. In the previously mentioned *Blacher v. Ridge*, a district judge addressed the denial of an H-1B visa petition. 436 F. Supp. 2d at 605. The judicial officer reasoned that 8 U.S.C. § 1184(a)(1) "clearly grants discretion to the Attorney General in these cases to determine whether the conditions for the visa have been met." *Id.* at 606. Invoking § 1252(a)(2)(B)(ii) and citing *CDI Information Services, Inc.* for support, the district judge held:

> Although denials of H1-B visas are not enumerated specifically in the IIRIRA legislation, the plain language of the legislation necessarily precludes judicial review of the discretionary denial of the H1-B visa petition. *See CDI Info. Servs., Inc. v. Reno,* 278 F.3d 616, 620 (6th Cir. 2002). Therefore, INA § 242(a)(2)(B)(ii), codified as 8 U.S.C. § 1252(a)(2)(B)(ii), deprives this Court of jurisdiction to review the denial of the H1-B visa petition.

*Id.* at 607. This conclusion is not without persuasiveness.

Given the arguments on both sides of the issue and the debatable line between what is a discretionary decision and what is not, however, this Court declines to read *CDI Information Services, Inc.* as extending beyond the application expressly set forth in that decision and in *Thomas v. Jenifer*. Reading each regulation's use of "may" involved here to equal the sort of discretionary decision the court of appeals found to exist in "may be granted *at the discretion of*

13

the Service" would arguably effectuate an erroneous broad divestiture of jurisdiction not intended by the higher court's understanding of § 1252(a)(2)(B)(ii). And treating 8 U.S.C. § 1184(a)(1) as providing a blanket discretionary umbrella for all regulation-related decisions that fall under that statute might similarly work an unintended result. Rather than overreach and erroneously deny a party consideration of the merits, this Court concludes that it has subject matter jurisdiction and will proceed to address the merits of this litigation.

### B. Merits

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

14

that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

Plaintiff is entitled to the relief sought if the denial of the petition was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  Under this standard and in light of the relevant statutory and regulation provisions, Plaintiff must prevail.

The issue before this Court is whether Defendant was incorrect in concluding that there was not a specialty occupation involved here.  A "specialty occupation" is "an occupation that requires . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States."  8 U.S.C. § 1184(i)(1)(B).  The related regulation definition provides:

> Specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii).  The regulation also provides that "[t]o qualify as a specialty occupation, the position must meet one of several criteria," one of which includes that "[a] baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position."  8 C.F.R. § 214.2(h)(4)(iii)(A).  Rokoczi must have completed the degree to satisfy 8 U.S.C. § 1184(i)(2)(B).

The November 11, 2011 decision denying the petition targeted the foregoing requirement that the degree be in a specific specialty, stating: "There is one reason why the record is

insufficient to classify the proffered position as a market research analyst position. The only reason concerns whether or not a baccalaureate or higher degree in a specific academic discipline is required for the position of Market Research Analyst." (ECF No. 17, at 7.) The decision went on to explain that although the United States Department of Labor's 2010-11 edition of the *Occupational Outlook Handbook* ("*OOH*") recognized a baccalaureate degree as the minimum educational requirement for many market and survey research jobs, the *OOH* does not indicate that these degrees need be in a specific specialty directly related to market research. The decision offers the following support for this conclusion:

> That the OOH does not indicate that market research analyst positions normally require at least a bachelor's degree in a specific specialty is evident in the following discussion in the "Training, Other Qualifications, and Advancement" section of its chapter "Market and Survey Researcher":
>
>> A bachelor's degree is the minimum educational requirement for many market and survey research jobs. However, a master's degree may be required, especially for technical positions, and increases opportunities for advancement to more responsible positions.

(ECF No. 17, at 7.) The decision cites a similar excerpt of the *OOH* as additional support. The absence of a specific specialty requirement led to the conclusion that the occupational category was not a specialty occupation as defined in the relevant statutory and regulation provisions. The decision includes the caveat that its conclusion does not necessarily apply to all market research analyst positions; rather, the decision explains, a specific market research analyst position may qualify as a specialty occupation if documented evidence establishes that the position "is one for which the normal minimum entry requirement is a baccalaureate or higher degree, or its equivalent, in a specific specialty closely related to the position's duties." (ECF No. 17, at 8.) Defendant concluded that Plaintiff had failed to meet this burden, discussing how

16

Plaintiff failed to meet the four regulation criteria:

>(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
>(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
>(3) The employer normally requires a degree or its equivalent for the position; or
>
>(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

The relevant facts here are presented by the administrative record upon which Defendant relied in reaching this decision to deny the petition. This record establishes that Rokoczi is a recent graduate of Franklin University who obtained a bachelor of science degree in marketing and finance. His course work included financial accounting, spreadsheets, databases, statistical concepts, managerial accounting, marketing behavior, marketing research, and money markets. He hoped to apply this knowledge as a market research analyst, *not as a manager*. And the record indicates that a minimum requirement for entry into the position of a market research analyst is the specialized course of study in which Rokoczi engaged. Additionally, the record here includes specific job duties, not generic duties as Defendant found. Perhaps most bewildering is that Defendant rejected the evidence that Rokoczi would actually be performing these job duties if hired, despite no evidence to the contrary and no other apparent reason for failing to credit the evidence on this record.

Defendant continues to reject this record in favor of supporting a flawed denial. What

Defendant overlooks is that the illogical leaps about which Plaintiff complains in its thorough briefing cannot be separated from the process in which Defendant engaged in its decisionmaking.  Stated simply, Defendant did a poor job of keeping the record straight and its focus on the actual inquiry involved.  Defendant expressly admits in its briefing to the following inexplicable errors:

> RFC correctly notes that USCIS's references to the OOH in subsection one of the decision are misplaced.  RFC's Motion for Summary Judgment ("RFC MSJ") at 9-10, citing CAR at 7.  Those OOH references discuss: a preference for degrees in business administration, the filling of positions via the promotion of experienced staff, and the importance of in-house training programs.  (CAR at 7).  However, those references are from the OOH section describing Advertising, Marketing, Promotions, Public Relations and Sales Managers.  (CAR at 7).
>
> USCIS incorrectly referred to the OOH section describing Advertising, Marketing, Promotions, Public Relation and Sales Managers; however, the denial previously addressed the OOH's lack of a degree requirement in a specific specialty for "Market and Survey Researchers."
>
> While USCIS's RFE specifically requested a breakdown of the percentage of time that the beneficiary would spend on various duties, Petitioner provided no such breakdown.  Accordingly, USCIS's statement that Petitioner submitted such a breakdown is not accurate.
>
> USCIS's decision appears to incorrectly identify the proffered position as a Marketing Manager rather than a Marketing Analyst.

(ECF No. 12, at 8-9 nn.2-5.)  These errors are not the essentially inconsequential lapses that Defendant suggests.  Instead, they constitute a litany of incompetence that presents fundamental misreading of the record, relevant sources, and the point of the entire petition.  If Defendant is going to deny a petition that will send Rokoczi to another country after twenty-one years of living in the United States, it should afford Plaintiff and Rokoczi a bare minimum level of professionalism, diligence, and reasoning.

Defendant argues that Plaintiff is attempting to read out of the statutory and regulation

requirements the "specific specialty" component. But Defendant's approach is too narrow. The record here indicates that a market and survey researcher is a distinct occupation with a specialized course of study that includes multiple specialized fields (ECF No. 17, at 37-38), that Rokoczi had completed such specialized study in the relevant fields of marketing and finance, and that Plaintiff sought to employ him in such a position. Plaintiff provided evidence that it required a baccalaureate degree for this position, and there is no apparent requirement that the specialized study needed be in a single academic discipline as opposed to a specialized course of study in related business specialties. Defendant's implicit premise that the title of a field of study controls ignores the realities of the statutory language involved and the obvious intent behind them. The knowledge and not the title of the degree is what is important. Diplomas rarely come bearing occupation-specific majors. What is required is an occupation that requires highly specialized knowledge and a prospective employee who has attained the credentialing indicating possession of that knowledge. *See Tapis Int'l v. I.N.S.*, 94 F. Supp. 2d 172, 175-76 (D. Mass. 2000) (rejecting agency interpretation because it would preclude any position from satisfying the "specialty occupation" requirements where a specific degree is not available in that field).

   A petition should be decided on the actual record, utilizing the correct portions of relevant resources, and for the actual position to be filled. Defendant has failed to meet this fundamental threshold for rational decisionmaking and has instead engaged in conduct that cannot be separated from the taint of the foregoing errors. Under APA review, it is well settled that

> [i]n order for agency action to survive judicial review the agency must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its

>action including a 'rational connection between the facts found and the choice made.' " *Id.* at 43, 103 S.Ct. at 2866 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245-46, 9 L.Ed.2d 207 (1962)). The agency's explanation is subject to review under the standard set out in *Overton Park*, which requires the court to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quoting *Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823-24).

*Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1004 (6th Cir. 1995). Defendant failed to examine all of the correct relevant data and to articulate an untainted, satisfactory explanation for the denial that rationally connected the facts to the decision. The denial of the petition here was thus arbitrary, capricious, and an abuse of discretion. This Court therefore agrees with Plaintiff that Defendant "failed to provide a coherent, rational explanation for its decision and its decision runs counter to the evidence before it." (ECF No. 18, at 3.)

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 4) and **DENIES** Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment (ECF No. 12). Defendant shall grant Plaintiff's petition and change Rakoczi's status to H-1B nonimmigrant. The Clerk shall enter judgment accordingly and terminate this action on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE