IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RESIDENTIAL FINANCE
CORPORATION,

      Plaintiff,

  v.

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES,

      Defendant.

Case No. 2:12-cv-00008
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Application for Attorney's Fees pursuant to the Equal Access to Justice Act (ECF No. 22), Defendant's memorandum in opposition (ECF No. 24), and Plaintiff's reply memorandum (ECF No. 25). For the reasons that follow, this Court finds the application well taken in part.

Previously, this Court entered summary judgment in favor Plaintiff, Residential Finance Corporation, and against Defendant, the United States Citizenship and Immigration Services, in regards to a Form I-129 petition seeking an H-1B Visa for Geza Rakoczi, an employee of Plaintiff. The Court concluded that Defendant must grant Plaintiff's petition and change Rakoczi's status to H-1B nonimmigrant (ECF No. 20, at 20), and the Clerk entered judgment on March 12, 2012 (ECF No. 21). Following entry of judgment, Plaintiff filed its application for attorneys' fees. (ECF No. 22.) The parties briefed the issues involved prior to the Court conducting a hearing on the application on May 7, 2012.

There is no dispute between the parties as to whether Plaintiff can pursue attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Although Defendant

initially argued that Plaintiff did not qualify as a party under § 2412(d)(2)(B)(ii), Defendant conceded that Plaintiff meets the statutory net worth and number of employees criteria at the conclusion of the hearing. Nor is there any longer a dispute over whether Plaintiff has incurred any fees in this litigation. Plaintiff offered evidence at the hearing that it entered into a fee agreement with counsel in which Plaintiff would pay $5,000.00 toward the fees incurred, with the firm performing the remaining work billed on a pro bono basis unless counsel could obtain an award of fees following judgment. Defendant reasonably conceded that although Plaintiff had not yet paid counsel the $5,000.00, the debt constituted fees incurred sufficient to negate the argument that Plaintiff had incurred no fees in this litigation and therefore should be precluded from pursing fees under the EAJA.

With much of the briefing now moot, there are thus four core issues remaining for disposition. First, this Court must decide whether Defendant's position in this litigation was substantially justified or whether other special circumstances exist that would make an award under the EAJA unjust. Second, if an award is warranted, the Court must then determine whether Plaintiff can receive attorneys' fees that exceed the amount for which it is contractually obligated (*i.e.*, the amount of fees above the $5,000.00 cap set forth in the fee agreement). Third, this Court must decide what is the appropriate hourly rate that should apply to the fee award, regardless of the overall amount of that award *(i.e.*, is a departure above the statutory amount of $125.00 per hour appropriate). Fourth, having concluded what hourly rate applies, the Court must determine the resultant reasonable fee award by applying that hourly rate to the hours billed.

***Statutory bar to award.*** The EAJA provides in relevant part that "a court shall award to

a prevailing party . . . fees and expenses, in addition to any costs awarded . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  Defendant does not contest that Plaintiff is the prevailing party, but does argue that its position was substantially justified so as to foreclose an EAJA award here.  Electing to forego any "special circumstances" theory, the crux of Defendant's argument is that although the denial decision at the heart of this litigation was poorly constructed, the legal position that Defendant took to defend that decision was nonetheless substantially justified.

This Court disagrees with Defendant's conclusion.  There is no doubt that, as Defendant's counsel characterized it in his closing argument, the flawed denial decision was "poorly constructed."  But that decision was also so substantively deficient so as to constitute work product produced by incompetence.   This Court previously explained that, in an attempt to salvage the mess with which it found itself, Defendant "continue[d] to reject [the administrative] record in favor of supporting a flawed denial."  (ECF No. 20, at 17.)  Thus, the Court concluded, "[w]hat Defendant overlooks is that the illogical leaps about which Plaintiff complains in its thorough briefing cannot be separated from the process in which Defendant engaged in its decisionmaking."  (*Id.* at 17-18.)  Defendant repeats the same misstep here.

In other words, Defendant's merits arguments were not substantially justified in this litigation because, although they may have had an arguable basis in the abstract, they carried no persuasive force and had no core foundation in *this* case on the *particular* record involved.  Invoking an arguable proposition of law to defend a decision that turned on irrational incompetence and not on mere disagreement over the law is not sufficient here.  Defending the

3

denial decision's lapses cannot be regarded as substantially justified when, as this Court previously explained, the lapses "constitute a litany of incompetence that presents fundamental misreading of the record, relevant sources, and the point of the entire petition." (*Id.* at 18.) Although Defendant's legal points may well prove substantially justified in another case, they failed here to provide the legal cloak of propriety with which Defendant sought to cover from critical review the worst form of decisionmaking: decisionmaking that is arbitrary, capricious, and an abuse of discretion.

To be clear, the fact that Defendant lost this case is not why its arguments were not substantially justified. Rather, the fact that Defendant asserted those arguments on this record, a record inherently untethered from the legal issues Defendant sought to invoke, is what keeps Defendant's position from being substantially justified. Defendant did not have a reasonable basis here in both law and fact. Section 2412(d)(1)(A) therefore does not afford Defendant the refuge it seeks from an award of EAJA fees.

***Potential cap on award.*** Defendant argues that the EAJA's requirement that fees and costs be incurred means that the party seeking the award cannot have received purely *pro bono* services. The hearing evidence indicates that Plaintiff's counsel took on representation with a fee agreement that was described as "predominantly *pro bono*," with Plaintiff agreeing to pay up to $5,000.00 and counsel working beyond that amount without billing Plaintiff. Defendant's briefing argued that no award was permissible in this case because Plaintiff had not incurred any fees, and Defendant retreated from this position after the hearing testimony concerning the fee agreement between Plaintiff and its counsel. It is not fully clear to this Court whether Defendant intended its voluntary concession that fees had been incurred to vitiate all potential objections to

4

a fee award on *pro bono* grounds or only an objection to the $5,000.00 worth of fees that Plaintiff agreed to pay. There is the possibility that Defendant would still object to any ward of fees over the $5,000.00 amount on the grounds that such additional fees were accumulated on *pro bono* and therefore not actually incurred by Plaintiff.

This Court concludes that Plaintiff incurred fees so as to render Plaintiff eligible for a fee award under the EAJA. The Court also notes that there is no conclusively binding precedent to support what could have been a potentially limiting argument (*i.e.*, capping any potential fee award at the fee agreement cap of $5,000.00). This Court will not guess that Defendant takes this narrowed position and therefore concludes that Plaintiff is eligible for a full award of reasonable fees, including any fees incurred for which Plaintiff is not liable. *See Cornella v. Schweiker*, 728 F.2d 978, 987 (8th Cir. 1984) (holding that the EAJA includes within its scope awards for *pro bono* work and noting that "the district courts have allowed *pro bono* awards under the EAJA with virtual unanimity").

*__Hourly rate.__* The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff argues that an inflation-adjusted increase in the statutory fee is warranted and that the complexity of the case and the limited availability of qualified attorneys who could handle this litigation warrants accepting the two Plaintiff's counsel working as a team and being compensated for most of their work at the rate of $275.00 per hour.

The Court begins with the presumption that the statute sets forth an upper limit on the

5

possible hourly rate that can be adjusted only under specific circumstances. As another judicial officer has noted, "[i]t does not matter whether [a plaintiff] hires John Doe at $125 per hour or Atticus Finch at $1,250 per hour–in most cases, the fee award under the EAJA will be the same." *Turner v. Astrue*, 764 F. Supp. 2d 864, 867 (E.D. Ky. 2010). The prevailing market rates as set forth in the Ohio State Bar Association rates survey that Plaintiff introduced into evidence certainly exceed this statutory cap, which leads this Court to begin with the conception that the cap amount is reasonable and need not be adjusted downward.

From this starting point, the Court then credits the need for adjusting upward the statutory rate of $125.00. Plaintiff introduced convincing evidence that applying the Consumer Price Index for All Urban Consumers to the statutory rate results in an adjusted-for-inflation rate of approximately $182.00 per hour. Arguing that if the Court awards fees it should limit the hourly rate to an adjusted statutory cap, Defendant states in its briefing that it "does not object to the award of fees adjusted for inflation according to the local Consumer Price Index. Moreover, Defendant notes that such [an] award is nearly identical to the evidence submitted by Plaintiff establishing the median community rate for attorneys in practice for 11 to 15 years at $180." (ECF No. 24, at 10.)

The Court finds that an increase in the cost of living justifies a higher fee under § 2412(d)(2)(A)(ii) than the $125.00 set forth in the statute. A just and appropriate adjusted hourly rate of $182.00 is warranted. Such an amount not only meets Plaintiff's request, but also falls within the scope of what Defendant agrees is reasonable (once an award of fees will be made). Moreover, as Defendant correctly notes, it still falls within the Ohio State Bar Association rates survey.

In fact, the $182 per hour rate still comes in on the lower end of the spectrum under most of the categories in that survey.  Both sides argue about which category of that survey best applies to Plaintiff's counsel.  Rates vary depending upon not just the precise market subset involved in the survey, but also the number of attorneys involved in the firm and the location of the office.  This Court finds the location of an office to be of little value in informing market rates in modern practice.  But more significant for today's purposes, the Court declines to find that any special factor, such as the limited availability of qualified attorneys for this proceeding, exists so as to warrant an additional upward departure from the adjusted default statutory rate.  In other words, the debate over which part of the survey should apply is moot because the adjusted statutory rate falls within the range of the survey and there is no cause to depart beyond the adjusted statutory rate to necessitate broader market concerns.

There is no evidence indicating that there is much of a dearth of immigration attorneys even in the local market, and there is unquestionably no shortage of experienced federal litigators in this market.  There is also no evidence that attorneys of such experience as Plaintiff's counsel were critical to Plaintiff prevailing, although the Court is quick to note that such experience no doubt aided Plaintiff's cause.  Thus, while the Court recognizes the specialized component of part of this litigation, much of the work has also been of a notably routine nature.

Given the hourly rate accepted by this Court, there is no need for extended inquiry into whether counsel of less experience would likely have achieved equal success.  Additionally, the fact that the Court has accepted *two* counsel working on behalf of Plaintiff as reasonable if not necessary at all times mitigates against finding that an increase in the hourly rate of both counsel

above the adjusted statutory rate is justified. Plaintiff's counsel are to be fairly compensated for their notably commendable efforts here–which is not necessarily as fully compensated as they might wish–and they understood from the outset that the efforts that they undertook were in part on a possible *pro bono* basis. They also understood, or should have understood, that the statutory cap is just that: a statutory cap subject to significantly limited adjustments. Only the adjusted statutory rate of $182.00 is justified here.

  ***Award calculation.*** Plaintiff has introduced evidence indicating that its counsel expended at least 110.95 hours prosecuting this action and 18.45 preparing the fee application, for a combined total of at least 129.4 hours of work billed. Although there was testimony that counsel devoted additional time to the fee application briefing in preparing the reply memorandum, in addition to time incurred but written off at counsel's election and the unrequested time spent at the actual fee application hearing, the Court confines its analysis to that time Plaintiff actually requests in the un-supplemented fee application.

  Defendant contests the time records as evincing duplicative work. Defendant asserts that there was no need for the team approach Plaintiff employed, targeting specifically time spent discussing jurisdictional issues, revising the summary judgment motion, and attending the status conference. The Court is not wholly persuaded by this argument, but as noted above, the Court does recognize that Plaintiff's counsel are both experienced practitioners and that although this case presented some interesting issues, it did not necessarily demand such experienced counsel. Again, however, accepting both counsel as reasonable goes hand-in-hand with concluding that an increase in the hourly rate of both counsel above the adjusted statutory rate is not warranted. If a greater rate were permitted in this case, the Court would likely look at the hours more

harshly; paying counsel more would in turn perhaps require of that counsel a skill set that both counsel *combined* to meet here. Paying counsel less than the $275.00 requested means that the Court is more inclined to accept Plaintiff's contention that one counsel's provision of immigration law expertise and the other counsel's provision of federal court expertise was reasonable and maybe even necessary to achieve the results obtained.

      This is not to say that the case was overstaffed on Plaintiff's side. It is to say that the case was certainly reasonably staffed in light of the adjusted statutory rate. Moreover, Defendant repeatedly had two counsel involved in this litigation as well, partially undercutting Defendant's one-is-enough argument. In any event, the Court is concerned with what is reasonable, not necessarily with what could have been done to ensure nothing less than optimal utilization of resources at each and every step of the litigation. Defendant's "billing judgment" argument thus lacks a persuasive foundation.

      Defendant also attempted to puncture the records submitted as incomplete on two grounds. First, Defendant posited that the records were unreliable because they were incomplete. In writing time off, Defendant argues, Plaintiff failed to present this Court with a complete portrait of the entirety of the work performed in connection with this litigation. Second, Defendant characterized the time records as unreliable estimations of the time expended. To an extent, Defendant perhaps seeks to have it both ways, criticizing Plaintiff's counsel for not billing for everything and then arguably if perhaps obliquely suggesting that counsel billed for too much. There is no evidence before this Court establishing that the records submitted do not capture fairly and accurately the work performed in connection with this litigation for which counsel seek to be paid. There is no requirement that counsel include irrelevant time records for

work performed for which they do not seek to be paid, and there is no evidence even suggesting that counsel did not perform every moment of every time entry for which they seek fees.

The Court concludes that 129.4 hours of work billed is reasonable. This Court's own experience and the affidavits Plaintiff submitted support this conclusion. Thus, based on the evidence before this Court, Plaintiff's counsel expended 110.95 hours prosecuting this action and 18.45 preparing the fee application, for a combined total of 129.4 hours of work billed. Applying the adjusted hourly rate of $182.00 results in an EAJA fee award of $23,550.80 (129.4 x $182.00 = $23,550.80). The Court recognizes that this amount exceeds the "no greater than $20,340" fee award for which Defendant alternatively argues in its memorandum in opposition (ECF No. 24, at 10), but well short of the $33,869.15 in fees Plaintiff requested (ECF No. 22, at 10).

Plaintiff also requests expenses in the amount of $464.70. Although disputing the amount of fees that could be reasonably awarded, Defendant does not contest the $464.70 in expenses sought. (ECF No. 24, at 10.) This Court concludes that the expenses sought are reasonable and appropriate.

In conclusion, the Court **FINDS** that an EAJA award is justified, **GRANTS** Plaintiff's application, and **AWARDS** Plaintiff attorneys' fees in the amount of $23,550.80 and expenses in the amount of $464.70. (ECF No. 22.)

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE